LOUIS EISINGER *v.* MAIZA WALLACE, DEFEND-
ANT, HOWARD LAWS AND GEORGE ODA,
GARNISHEES.

No. 2043.

ARGUED DECEMBER 18, 1931.     DECIDED FEBRUARY 10, 1932.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is an action of assumpsit in which the plaintiff claimed of the defendant the sum of $4591 as compensation for work, labor and services performed by him for the defendant at the latter's request. The defendant conducted business under the name of Hawaiian Tile & Marble Company. From February, 1930, until the end of the year, or perhaps until January 12, 1931, the plaintiff performed services for the defendant as tile-setter and also in preparing and furnishing estimates for bids for setting of tile. According to the plaintiff's testimony, in August, 1930, and not until then, the parties came to an

understanding as to the amount of his compensation and that was that he was to draw from the company $300 per month as wages, the defendant was to draw $140 per month as wages, and the two were to divide equally the net profits of the business after deducting the total of these two monthly sums. There was evidence to the contrary, to the effect that while an interest in the business was offered him by the defendant, he consistently refused to accept it. However, the trial judge, sitting without a jury, found that the contract was as testified to by the plaintiff.

In the course of the trial the parties came substantially to an agreement as to the amount of the plaintiff's monthly wages (at $300 per month) which remained unpaid, and that balance was by the court in its judgment awarded to the plaintiff. The question then remained, under the finding of the trial judge that the plaintiff was entitled to fifty per cent of the profits of the business, what were the profits of the business during the term of the plaintiff's service?

There was undisputed evidence to the effect that the two parties in August of 1930 employed one Westley to open a set of books so as to ascertain what the profits of the business were. Westley opened a set of books and prepared a statement which was introduced in evidence as Exhibit 2, apparently showing on its third page that the profits of the business during the whole of the year 1930 had been $2639.72. Westley testified by way of explaining the contents of his report and how the figures were arrived at and what they meant. The trial judge, however, declared: "I am not particularly interested in this witness. I am going to hold that this statement is binding and cannot be attacked. It is a statement made up from the books of the company and they dealt on the basis of that profit, and are bound by that state-

ment, any evidence to contradict the statement to the contrary notwithstanding." Judgment was rendered for the plaintiff for one-half of $2639.72, as his share of the profits. This ruling, we think, was based upon an erroneous view of the law and was not supported by any evidence. The undisputed testimony was that when the defendant exhibited the statement (Exhibit 2) to the plaintiff he immediately objected to the inclusion of three substantial items of charges against the income; that Mr. Moncrief, representing the defendant at that interview, insisted that the three items constituted proper charges, and that the disagreement resulted in the immediate tender by the plaintiff of his resignation from the employment of the defendant. It is impossible under these circumstances to regard the statement or the conference at which it was discussed as constituting an account stated or as binding the defendant so that she could not thereafter question the correctness of Exhibit 2 as a statement of profits. There was no promise or agreement, express or implied, by the defendant to pay to the plaintiff the amount of the profits as shown by the third page of Exhibit 2. On the contrary, there was nothing but misunderstanding and controversy upon the subject.

Westley expressly testified as follows: "Q And the third sheet of that statement shows an apparent profit of $2639.72? A Yes. Q How is that figure arrived at? A It was arrived at by taking all the jobs finished during the year, going back to January, and the cost from August on. I couldn't go back and take the cost prior to August. It was impossible because no record was kept. So, as a result, the outstanding accounts for labor and material and so forth were charged off to the capital account and it doesn't appear in the profit and loss statement. If it did it would show a loss of five hundred

and some odd dollars. As it appears here there was a loss of $508. approximately. There is a net deficit of $508.02 for operations during the year 1930. Q Will you explain again how that arises? A In setting up the books I couldn't get the expenses prior to the date I was called in to set up the books. I think it was August I was called in. I had to take the invoices, mainly from Lewers & Cooke, for material, and the time books, and set up as a liability, charging to capital account instead of to profit and loss, but they could get all the jobs finished and they credited all those jobs to the profit and loss statement as an income, but the expense charged against the income is from August, only from the time I was called in, and from then on we started to keep track of the expenses and put them on the books. Prior to that it was simply charged up to capital and credited to liability account. Lewers & Cooke had a big item. The total liabilities at that time were $2600. which should have been charged against the profit and loss. Q This so-called profit shown on page 3 of Exhibit 2 does not take into consideration the expense from January 1st until that time in August when you set up the books? A Yes. Q And the only way you could consider that expense was as a capital loss? A Yes. Q And you put it in as a capital loss? A Yes. Q And then between that capital loss and this profit, being the sum of $508.02 in the red? A Yes. That was for the year. * * * Q You had no record of any of the profits or expenses of the business from January down to August? A No." This testimony remained entirely uncontradicted. It came from the person who prepared Exhibit 2 and does not contradict Exhibit 2, but merely explains it. The only finding possible from Westley's uncontradicted testimony was that the third sheet of Exhibit 2 was not a statement of the profits for the year because the costs

of the various jobs there reported were not deducted from the contract prices or income. While the plaintiff was undoubtedly entitled to have excluded from the computations losses and expenditures incurred prior to his employment, it was with equal clearness due to the defendant that losses suffered and expenditures incurred in the performance of the contracts upon which the plaintiff worked should be deducted from the income of those contracts in order to learn what the profits were during the time of his employment. The finding made that the profits for the period in question were $2639.72 is entirely unsupported by any evidence and is contrary to the only evidence given on the subject.

Under these circumstances it will be unnecessary and unprofitable to consider whether the trial judge sufficiently complied with the requirements of the statute concerning written decisions in all jury-waived cases, or whether the failure, if any, to file a written decision was excepted to in due time so as to render the exception available in this court.

The decision and the judgment are set aside and a new trial is granted.

*E. J. Botts* (also on the brief) for plaintiff.

*Marguerite K. Ashford* (*Thompson, Beebe & Winn* on the briefs) for defendant.